REQUESTED BY: Dear Senator:
You have asked us whether any of the provisions of LB 170 violate the provisions of Article VIII, Section 1, Article IV, Section 28, or any other provisions of the Nebraska Constitution. We conclude that some of the provisions of the bill might run into some difficulties in those areas.
Section 1 of the bill provides that the Tax Commissioner, in cooperation with the county assessors, shall, on or before January 1, 1979, make a valuation of all real estate in the state, and shall establish a statewide computerized property tax valuation system. Section 2 provides that he shall develop a technique to adjust the valuations of all taxable property on an annual basis and shall annually provide each county assessor with the updated real property tax valuations for his county.
We see no particular constitutional difficulties with these sections.
Section 4 requires the Tax Commissioner to notify the State Board of Equalization and Assessment of each county whose assessed valuation for real estate varies by more than three percentage points from that determined by the Tax Commissioner. We see no constitutional difficulty with that provision.
Section 6, however, amends section 77-509, R.R.S. 1943, by adding this language to that section:
 "The State Board of Equalization and Assessment shall not enter and certify its order for each county until the Tax Commissioner's valuation and the counties' valuation vary three or fewer percentage points from one another."
This provision at least arguably runs afoul of both of the constitutional provisions you inquire about. It appears to give legal sanction to a variation from uniformity of taxation, and it appears to give the Tax Commissioner authority which must constitutionally be exercised by the State Board of Equalization and Assessment.
Article VIII, Section 1, of the Constitution requires taxes to be levied by valuation uniformly and proportionately. Theoretically, this means that all property must be valued at its actual value, and admits of no variations whatever. We all recognize, of course, that this goal has not been, and never can be actually reached, because the value of property is a matter of varying opinions, and is not subject to exact determination. This, however, is a question of evidence. The county assessor, the county board of equalization, and the State Board of Equalization and Assessment are supposed to consider the evidence and reach a decision as to what the actual value is. In legal theory, after the State Board of Equalization and Assessment has either approved the county valuations or adjusted them, their final figures are the actual values. The fact that someone may argue that someone along the line made a mistake, and that the final figures are incorrect is of no constitutional significance. The court would recognize that the State Board of Equalization and Assessment must make the final determination, and if its determination is supported by evidence, it will be affirmed.
Section 6, however, appears to give tacit approval to variations from uniformity. If it is construed to authorize the State Board of Equalization and Assessment to approve county valuations varying three percentage points from the board's determination of actual values, it seems to be technically in violation of the uniformity provision. The point is that the normal variations due to differences of opinion of which we have spoken will still exist, and in addition a statutory variation will be sanctioned. While we would all be happy to achieve equalization within three percentage points, we believe section 6 may violate the theory behind Article VIII, Section 1.
Article IV, Section 28, gives the State Board of Equalization and Assessment the power to equalize assessments of property for taxation within the state. Section 6 of the bill forbids the board to approve the county's valuations until the Tax Commissioner's figures and the county's vary three percentage points or less. This appears to give the Tax Commissioner's figures controlling weight. The final determination of values must be made by the board, not the Tax Commissioner. His figures can only be evidence to be considered by the board. The board might conclude that the county's figures are correct, and the Tax Commissioner's were wrong. Yet, if he refused to change them, section 6 would forbid the board to enter and certify its order. We believe this gives more finality to the Tax Commissioner's figures than the Constitution permits.